Good morning, Your Honors. May it please the Court, my name is Joseph Rochelson, Student Counsel for Appellant Demetrius L. Harvey. At this time, I'd like to reserve three minutes of my time for rebuttal. Thank you. Your Honors, this case is about an individual's right to be free from unlawful arrest and detention, and this Court should reverse the District Court's grant of summary judgment for two reasons. First, the record, when viewed as a whole, demonstrates a palpable lack of probable cause for Mr. Harvey's arrest and subsequent detention. And second, it manifests each individual defendant's unreasonable conduct, thereby barring them from qualified immunity, as well as the City's deliberate indifference towards Mr. Harvey's constitutional rights, thereby subjecting it to liability. Now the linchpin of Appellee's assertion here, that probable cause existed for Mr. Harvey's arrest, is the sole, hesitant, and uncorroborated identification of Mr. Harvey by Confidential Informant 21, based on a poor-quality online streaming video. However, the record here is replete with facts which put into question this C.I. 21's reliability and basis of knowledge, and which should have prompted Sgt. Arrozarena to corroborate any information he provided as to Mr. Harvey. The first red flag was the poor-quality video used by Sgt. Arrozarena and C.I. 21 to identify the suspects in the vandalisms. This was a video twice removed from the actual surveillance video in the store. It was blurry, fuzzy, and of low contrast, making the unique identifying characteristics of the suspects nearly unrecognizable. The second red flag was the hesitancy and flip-flop with which C.I. 21 identified Mr. Harvey. While assigning the moniker of Assad Bey, Mr. Harvey's former bakery alias, he first said that Assad Bey was a short, skinny individual with hair in a white suit. Later on in the video, he changed his mind and decided that Assad Bey was a taller, heavier-set individual with a shaved head standing behind the counter. He honors these two individuals look nothing alike in physical stature. The third red flag was the general description C.I. 21 used to describe Mr. Harvey to the officers. He said he was 21 to 23 years old, 5'6 to 5'7, 140 to 150 pounds, and with a shaved head. This is a general description that fits a significant percentage of young African American males, Your Honors, and is precisely the type of generic description that this court has repeatedly held as insufficient to establish probable cause for an individual's arrest. Further, after the affidavit for the arrest warrant was submitted and the arrest warrants were granted, Sgt. Arwad Zarana obtained a better quality video of the incident, and he met with two other confidential informants. He showed them the video, and they were asked to do exactly what C.I. 21 was asked to do. These informants identified certain individuals that C.I. 21 had mentioned, but they also contradicted C.I. 21's identification of another suspect named Jamal Bey, as well as they did not identify Mr. Harvey as an individual anywhere in the video, whereas C.I. 21 had thought he saw him in two places. Now, before the affidavit was submitted for the warrant, Sgt. Arwad Zarana had the readily available means to corroborate the information that C.I. 21 provided. He had called in all four eyewitnesses from the liquor stores, showed them the video, and showed them photo lineups, but only of the suspects Yusuf Bey and Donald Cunningham. He did not bother to try to identify Mr. Harvey, ask them to identify Mr. Harvey as an individual that they saw in the store. So why doesn't qualified immunity apply to all this? I mean, you do have a positive ID at the end of the video. It may be of poor quality. So even if we accept all of what you say is true, why wouldn't qualified immunity protect the officer? Qualified immunity, Your Honor, would only shield an officer who could reasonably believe his actions served him lawful. Here, no reasonable officer would have ignored these red flags. A reasonable officer would have conducted further investigation as to Mr. Harvey's ID. In Illinois v. Gates, the Supreme Court has placed a special emphasis in the context of informants on corroboration of an informant's tip by independent police work. And this Court has gone even further in Fuller v. M.G. Jewelry by stating that even if the information comes from the most presumptively reliable source, such as an actual eyewitness with firsthand knowledge of the crime, the duty to investigate is not dispensed with. Here, C.I. 21 has no proven track record of reliability with officers. He hesitated in his ID. He provided no other factual information. The only basis for his identifications here was the poor quality video. And these are all red flags that, well, the notes of the officer indicated that he had, he worked with the group, he knew the group. So it's not just, it's different from eyewitness testimony. He knew the people involved. He's trying to identify them off the video. So why isn't that enough? Well, Your Honor, two points. Under the totality of circumstances approach, again, there were many red flags that would have caused a reasonable officer to question his identification of Mr. Harvey. Second, it leads me to my second point, that the affidavit provided here to the magistrate was constitutionally deficient. It failed the Fourth Amendment requirement of providing particularized probable cause for Mr. Harvey's arrest. Right. No, I'm, for the sake of argument, I'm assuming that, hypothetically, my question goes to qualified immunity. You have red flags. You have an affidavit that may or may not be sufficient. But you do have some evidence on the other side. You have the fact that there was eventually a positive ID from a confidential informant who knew the, according to the officer's notes, knew. If somebody, if there had been a great video and a positive ID by the same witness who was unequivocal, wouldn't that be enough? It may have been, Your Honor, but here that was not the case. Right. But, I mean, so let's say it's your, the, I'm just saying in the world of qualified immunity, we afford the officer some difference. If his actions could have been, would have been reasonable, if another reasonable officer in his shoes would have done the same. However, taking, for example, Your Honors, while the identifications of Yusuf Bey and Donald Cunningham were independently corroborated by their coming forward, that again would only go to probable cause for their arrests. It would not establish by association that there was probable cause for Mr. Harvey's arrest. And here, Sergeant Arvizuena seems to have relied on just that. The fact that perhaps there was more information to arrest other individuals associated with the bakery and the mere fact that CI-21 named Mr. Harvey, all that did was demonstrate an association with the bakery. It didn't corroborate his involvement in the crime. When the other suspects came forward, it corroborated their identification by CI-21. Further, Your Honors, there are tribal issues of material fact as to the city's liability here and its failure to adequately train its officers to conduct investigations and obtain arrest warrants when relying solely on a confidential informant's tip. Here the city has produced two documents, a general order on procedures for confirming, serving, and withdrawing warrants, as well as a training bulletin on obtaining arrest warrants based on probable cause. However, both of these documents are constitutionally deficient in that they do not outline any policy informing or requiring their officers of the necessary requirements when relying solely on a confidential informant. And this Court has held in Humphreys v. County of Los Angeles, Wallace v. Spencer, that in order to survive summary judgment, a plaintiff need only show a question of fact as to whether a city had a custom, policy, or practice which caused constitutional violations. And demonstrating the absence of a relevant policy is adequate to demonstrate such a practice or custom that would deprive plaintiffs of their constitutional rights. And the training bulletins here demonstrate that they were the moving force behind the Mr. Harvey's injuries could have been avoided. Further, Your Honors, as to the supervisors involved here, they're liable for supervisory liability in their individual capacities for their actions and inactions in training, supervising, and controlling the subordinates. And as such, they're liable for the constitutional violations of the subordinates, especially if they directed, participated in, or knew of the violations and did nothing to stop them. Here, the record reveals that all of Mr. Harvey's, Sergeant Edward Zorana's supervisors were actively involved in this investigation. Police Chief Tucker and Deputy Chief Jordan personally directed Sergeant Edward Zorana on how to conduct his interview with CI-21. Police Chief, Deputy Chief Jordan also advised Sergeant Edward Zorana on how to handle the other suspects involved. Sergeant Edward Zorana's case notes throughout demonstrate how he periodically met with his supervisors, and they ratified his conduct throughout the investigation. Your Honors, the record here is replete with facts that demonstrate that there are, at the very least, tribal issues of material fact as to all of Mr. Harvey's claims, and that summary judgment is inappropriate here. It would only have been appropriate here if Appellees had met their burden of demonstrating that there are absolutely no tribal issues of material fact. However, a reasonable jury here could have gone either way on deciding on these facts. Very good. You've got about four and a half minutes left. You're on reserve? Yes, Your Honor. Okay. Thank you. Thank you. We'll hear from the City. Good morning, Your Honors, or almost good afternoon. I'm Rachel Wagner, representing the City of Oakland and several officer defendants with the Police Department. This case comes before this Court on the grant of summary judgment. The case against Mr. Harvey at the very beginning began with probable cause. The case before this Court, as I'll show the Court today, also ends with probable cause. Probable cause is just that, a fair probability that the suspect committed the crime. Fair probability is a term used both in Gates and in this Court's recent en banc decision in United States v. Gord in 2006. The Gord case provides guidance here, general guidance, about the practicalities of probable cause. It does not mean a preponderance of the evidence. It does not mean the same type of evidence that would support a conviction. Probable cause means a fair probability to a reasonable person. It's satisfied, as the Gord case noted in its opening to that decision, it is satisfied when the magistrate judge made a practical, common-sense decision that there was a fair probability of crime, and, quote, the Fourth Amendment requires no more. Right. So, but the magistrate judge was confined to what he or she knew in the affidavit, right? And we're going to move to that, Your Honor, if you'd like. Right. So, I mean, there was no independent evidence taken. They're the four corners of what the magistrate judge, which magistrate-based decision is in the affidavit, right? Correct. And let's, if you don't mind, Your Honor, let's move to that Ramey warrant and the affidavit supporting it here. I would note that this Court has said both in Gord and many cases that the Ninth Circuit is not in a position to fly-spec the affidavit of a magistrate and that great deference is paid, but I'm happy to fly-spec it today. Let's do a little spec-ing. Let's do that. It's pages 117 and 118 of the record that I would point the Court to. Those are two pages of Sergeant Arat Serena's affidavit. And without being argumentative, I'm going to be noting facts that were not mentioned in the brief or the opening. The following material facts were set forth in the affidavit at pages 117 and 118 and remain true and undisputed. First, that this confidential informant voluntarily met with police, that the confidential informant had, quote, independent knowledge, quote, of the black Muslim bakery group, that the confidential informant identified Harvey as, quote, Assad Bey. Many of these people he identified had the same last name, Bey, as an alias, and four others by name and affiliation from the video. Moreover, as set forth in the affidavit, the confidential informant identified Assad Bey and the others from DMV photograph arrays, where Mr. Harvey's picture was perfectly clear, amongst 14 photographs. Yes. And you know the defense or the plaintiff's response to that is there are only two light-skinned people. That's the – and, Your Honor, actually, no. Your Honor, that is the six-pack photo lineup, lineups from two eyewitnesses within the store which Sergeant Arat Serena collected before he arrested Mr. Harvey on December 30th. Okay. But this is in the affidavit itself, Your Honor. All right. Now, let me ask you a question. Let me interrupt you for a second. What do we make of the fact that there's not the usual recitation about the reliability and experience of the officer with the confidential informant? We have the recitation of the officer's, the sergeant's experience. Yes. And to back up for a moment, the reliability of the informant himself can be established in several ways, as noted in Angela Lopez, Ayers, and Rowland, for example. Those ways appear in this affidavit. One is citizen, he's known. There's a meeting to assess credibility and the basis of knowledge. He has independent knowledge. There's corroboration of the information. Sergeant Arat Serena contacted confidential intelligence sources within the police department who came forward with a declaration that is in the record here, who said, yes, Asad Bey is, in fact, Demetrius Harvey, and he is linked with the Black Muslim Bakery. Officers, Rochelle's declaration was submitted at summary judgment and is in the record here. Actually, I was asking a much more narrow question. What it says, I'm talking about the reliability of the confidential informant. And what it says is, I met with a confidential informant. This C.I. had independent knowledge of this group. And then it recites what happens at the video. Usually we see in affidavits that I know this confidential informant for many years, he's proved reliable in the past, et cetera, et cetera, that statements that go to the reliability of the confidential informant. Am I missing something in this affidavit? There is one more thing, Your Honor, and I misunderstood your question. I apologize. This confidential informant, who, as you noted earlier, worked for the bakery, lived on the compound, did not want that information disclosed and feared retaliation. It does not appear in the affidavit. What does appear is that his identification of Yosef Bey and Donald Cunningham as the ringleaders in the videos was confirmed by two employee witnesses within the store. And that appears in the affidavit at ER 118. So that in other cases, such as Roland and Angelo Lopez out of this circuit, have pointed out that because when an informant is right about some things, he's probably right about others, relying on Gates. The corroboration of information also supports probable cause. It does not have to be another person's identification of Harvey in particular. And there are cases relying on a single informant or a single identification because we're at the probable cause stage. We're at the fair probability stage. Is there anything in the record that indicates the reliability of this informant on prior occasions? No. Or how many occasions that this informant had dealt with the police? No. His reliability is based on corroborating information as we go. Okay. Yes. Now, this informant didn't identify him correctly the first time, right? Well, it's all one time, Your Honor. He was looking at a videotape of 10 to 11 men. He identified six of them. And he said, no, Asad Bey is not that man. He's the man behind the counter. It's the same sitting. And then when he did identify him, it was on something where he could scarcely see his face? Well, that's the argument of counsel. It's a videotape from the news that was not submitted to this court, but the store is lit. The incident lasted several minutes, and there's a couple people behind the counter. Well, you've seen the tape, I presume. We haven't. But you have, right? Is a characterization accurate that Mr. Harvey's back was turned most of the time that he was visible on there? I mean, the person who was alleged to be him. The incident lasted several minutes. I'd say that characterization isn't correct, but, Your Honor, our point is there is no factual dispute about probable cause. The facts that are in the affidavit provided the fair probability that the magistrate was entitled to infer. Well, except that. It's a whole different matter, I think, for the magistrate considering this if the magistrate judge is informed that, in fact, he ID'd someone else first and that it's a poor-quality video. Those facts aren't in the affidavit. Well, he stood by his identification of Mr. Harvey after reviewing the video. And, second, he pulled out Mr. Harvey as Assad Bey from the DMV photograph array. And, finally, his other two confirmations of the ringleaders were corroborated. Right, but I'm talking about what the magistrate judge had. I guess the question then is whether that's a material omission, Your Honor, and then we move to a different set of cases where whether that omission, whether for one moment he said that's Assad Bey, no, this is, and I stand by this, and then I look at a set of pictures and say that's my man, whether that's a material omission. Because there are, in fact ---- I understand your other point, and I'm not losing it, but I'm just focusing on this. Okay. Okay. That could have been in the affidavit. So could a lot of other things that would have, you know, damned Mr. Harvey further. At this point ---- It is a bit misleading to say he positively identified this person without also saying, but he did positively identify another person first. He corrected himself in the same sitting. So he did not positively identify the other person at all. He said no. Okay. And he gave six identifications. Each, in fact, each of them ended up being accurate as to the name of the person in the alias. And he had personal knowledge, which Sergeant Aratsarina from his meeting, which was videotaped and recorded, another indicia of the voluntary nature of this exchange of information, which Sergeant Aratsarina had. Importantly, before the arrest occurs, Sergeant Aratsarina brings in two employee witnesses. One a victim right behind the counter, Your Honor, both of whom in separate lineups, photographic lineups of African-American young, similarly-complected, similar-featured males, pick out Mr. Harvey. And again, we're at the probable cause stage for arrest, Your Honor. Can I press you on one point? As a confidential informant's knowledge, the affidavit just says he had independent knowledge. And I see a Supreme Court case saying that a conclusory statement doesn't get you very far. There's nothing to show why he had independent knowledge. He's working in a bakery with a large number of people, isn't he? The Black Muslim Bakery Association does have a large number of members, yes, Your Honor. So how well he knows these people, what is in the sources, we don't know. The magistrate didn't know. Well, that's the dilemma with confidential informants that Illinois v. Gates attempted to address. It rejected a rigid application of veracity and reliability for confidential informants from the 1960s in Aguilar-Spinelli, and instead said, look at the totality of the circumstances. And this circuit has looked at many confidential informant cases, including the district courts. How do we know his independence? That is where Sergeant Arat Serena is showing the independent knowledge that he has gained without divulging it and compromising this man's safety, and also showing the DMV photograph array and the two other corroborations in the same affidavit. You can see the contemporaneous case notes, but that's why there's various indicia of reliability for an informant. And there are a number of cases in this circuit and cases at the district court level well-reasoned in the last couple of years that say, let's look at all the indicia for the informant, not just at what's in the affidavit, about how he knows it, because that is exactly what would have compromised him here. He worked for the bakery. He lived there, too, Your Honor. But he turned out to be completely wrong about the identification. Well, he was wrong. He identified the wrong person. You're saying that he didn't? I'm saying that the DA dismissed the case in March. Yes, that's true, and that's in the record. That he was wrong is not. Mr. Harvey was not tried. He was dismissed from a group of cases that the DA was moving forward with. Are you suggesting you think he's guilty? I'm saying I have no opinion, Your Honor. The fact that the DA later dismisses a case that a guilty person is released has no impact whatsoever on probable cause. Mr. Harvey came forward in March 2006 with a lawyer with an alibi, but that's neither here nor there. We're at this point. Okay. But let's presume that the identification was incorrect, all right? I mean, he's taking the additional step of suing, and so we're here. If the identification is incorrect, what's the best explanation for it? Probably that you can't see from the video, right? Mr. Harvey gave the best explanation in his transcribed interview with Sergeant Arat Serena. He identified who that person was, said that they were within an inch, within 10 pounds of each other, and that if you didn't know them well, they probably could be mistaken for one another. Because you'll remember, Your Honor, that two eyewitnesses in the store also identified Mr. Harvey. It wasn't just a confidential informant. Before he was arrested. Well, before he was arrested, those eyewitnesses didn't know him as someone who worked at the bakery at all. They identified him from a six-pack lineup. Mr. Harvey didn't, according to his Second Amendment complaint, didn't answer questions that day. He did admit during the course of this case, Assad Bey is correct. He worked at the Black Muslim Bakery through October of 2005. He did provide information later. I'm looking again at this thing. It's stated that he positively identified the group of men who entered the labor market. Again, the affidavit states the CIA has independent knowledge of this group. Both those statements state that there is a group that had been identified as together. And, in fact, he has no particular basis for knowing them as a group. If the affidavit were accurate, it would say identify A, identify B, but not identify a group, which implies he knows they worked together. Well, ten men entered the store together, Your Honor. What's that? Ten men entered the store together to vandalize it. Yeah, but he says he knows them as a group. May I sum up? I see I'm almost out of time. Go ahead and answer the question. May I answer? Okay. The affidavit points out that these men have been linked to an organization. I'm sorry. They have been linked, and, indeed, internal intelligence sources confirmed they were linked, each of those men, to the Black Muslim Bakery Organization, and that those men had been identified as entering and being in the store at the same time, and thus the word group, Your Honor. I don't think it was meant to be a legal term. Do you have any further follow-up questions, sir? Any questions at all? All right. Thank you very much for your argument. May I make one comment, Your Honor? Sure. I didn't have a chance. I, too, agree that qualified immunity, which has an even higher burden to avoid summary judgment, most definitely applies here. Your Honor, there's a few points on rebuttal. Appellees contend that probable cause deals with probabilities, and while that's true, it is a well-established law that an officer must provide a neutral magistrate with all material and sufficient information to allow independent assessment of probable cause. Illinois v. Gates requires a magistrate to be provided with at least some of the underlying factual information upon which a confidential informant's reliability and basis of knowledge is based. We have none of that here. This Court, in Fuller v. M.G. Jewelry, requires that sufficiently detailed factual information that would cause a reasonable person not only to believe that a crime was committed, but that the named suspect was the perpetrator must be provided. Again, as this Court pointed out, all we have here are conclusory statements. As to C.I. 21's reliability or basis of knowledge, all we have is this C.I. had independent knowledge of the group. The underlying factual information which led to this conclusion that appears in the affidavit was omitted. The fact that he worked at the bakery, lived at the bakery, none of this was provided to the magistrate to allow the independent assessment. As to Mr. Harvey's, any information as to Mr. Harvey's actual involvement in this crime is also absent. The only sentence provided is on page 118 of the record, where the fiance states, this group all took some part in the commission of these crimes. This is the type of general allegation of criminal activity that this Court has held as insufficient in United States v. Angelo Lopez. Further, Your Honors, appellees assert that because this informant was right on some things, he was right on other things. That standard has been upheld by this Court, normally with confidential informants, as you stated, who have a proven track record of reliability. While C.I. 21's identifications of Yusuf Bey and Donald Cunningham may have been correct here and may have just bolstered his reliability, the totality of circumstances with the red flags would have caused a reasonable officer to conduct further investigation. Further, appellees rely on You can see, though, that if a witness's identification has been corroborated in some respects, then the requirement of showing reliability is reduced somewhat. In other words, you know, it's the confidential informant's history of reliability may be less important when there is cooperation. Do you agree with that? Yes, Your Honor. Okay. Why doesn't that get the city where it wants to go in terms of probable cause here? As to Mr. Harvey, there are many discrepancies with C.I. 21's identification of Harvey in the record. The first things being the red flags with the poor quality video. And second, when he, when Sgt. Arzern obtained the better quality video and showed it to the other two confidential informants, he attributed the discrepancy in the identifications and the lack of identification of Mr. Harvey to the fact that the second video he obtained was of better quality. It just demonstrates that he was aware that there were certain things here that should have prompted him to further corroborate C.I. 21's identification of Mr. Harvey. Further, appellees rely on a post-arrest statement here that Mr. Harvey made, that somebody who did not know himself and Cornell Hurst well would have made the mistake. First of all, this statement is irrelevant as it's made post-arrest, so it has nothing to do with probable cause. And second, unless appellees are willing to concede that in fact C.I. 21 was not as reliable as they claim, an individual who did not know them well, this statement is inconsequential. Further, Your Honors, I would like to make the point that the omissions in the affidavit here demonstrate exactly why qualified immunity would not protect Sgt. Howard Cerena. The fact that statements such as the poor quality state of the video, the flip-flopping in the identifications, the general description that was merely used, there are many factual informations in the record that Sgt. Howard Cerena did not apprise the issuing magistrate of. And it's precisely that conduct which resulted in a young man who was over 200 miles away from the scene of the crime on the night of the vandalisms to be unlawfully arrested. If there are no further questions, Your Honors. Thank you very much. Thank you. The case just submitted or just argued will be submitted. I want to thank Hastings for participating in our pro bono project. It's of great assistance to the Court, and I hope it is equally worthwhile to you. Thank you very much. Thank you for your arguments. The case just heard will be submitted for decision. As I mentioned, we'll be in recess for the morning. And, Judge Howell, we will reconnect with you shortly in the conference room.
judges: Hall, Noonan, Thomas